UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------x

MICHAEL JIMENEZ,

                Petitioner,

        v.

UNITED STATES OF AMERICA,

                Respondent.

------------------------------------------x

> USDC SDNY
> DOCUMENT
> ELECTRONICALLY FILED
> DOC #: _____
> DATE FILED: 7/15/10

07 Civ. 3573 (BSJ)

**Opinion and Order**

**BARBARA S. JONES**
**UNITED STATES DISTRICT JUDGE**

On April 6, 2007, Michael Jimenez ("Petitioner" or "Jimenez") submitted a Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2255 seeking to vacate, set aside, or correct his sentence of 120 months imprisonment followed by five years of supervised release. Jimenez bases his petition on the grounds that: (1) he received ineffective assistance of counsel; (2) his Sixth Amendment rights were violated; and (3) his transfer from state custody to federal prison to face trial for involvement in a narcotics conspiracy violated both his constitutional rights and the rights of the State of New York as a sovereign entity. For the reasons stated below, Jimenez's Petition is DENIED in its entirety.

### BACKGROUND

In May 2004, Jimenez was arrested and charged with conspiring to sell heroin as part of an organization that operated in the vicinity of Vyse Avenue and East 180th Street

(the "Vyse Avenue organization"). Specifically, superseding indictment S1 04 Cr. 283 (the "Indictment") charged Jimenez and fourteen co-defendants with "unlawfully, intentionally, and knowingly . . . distribut[ing] and possess[ing] with intent to distribute . . . one kilogram and more of mixtures and substances containing a detectable amount of heroin, in violation of Section 812, 841(a)(1), and 841(b)(1)(A) of Title 21, United States Code." (Indictment ¶ 2.) The Indictment further charged Jimenez with the overt act of selling 42 glassines of heroin stamped 'AP' to an undercover officer in the vicinity of Vyse Avenue in the Bronx. (Id. ¶¶ 4(K),(L).)

On August 17, 2005, Jimenez pled guilty pursuant to a written plea agreement ("Agreement") with the government. Pursuant to the Agreement, the parties stipulated that under United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines") § 2D1.1, the base offense level for Count One of the Indictment was 32 because Jimenez conspired to distribute at least 1 kilogram, but less than 3 kilograms of heroin. (Agreement at 2.)

The parties further stipulated that if Jimenez satisfactorily demonstrated through his plea allocution and subsequent conduct that he accepted responsibility for his actions, he would be granted a three-level downward adjustment

2

pursuant to U.S.S.G. § 3E1.1. The resulting offense level from those calculations was 29. (Agreement at 2.)

In the Agreement, the Government calculated that Jimenez had seven criminal history points. Jimenez had four criminal history points from two prior convictions: a conviction on or about February 16, 2001, for obstructing Governmental administration in the 2nd degree, and a November 9, 2001 conviction for burglary in the 1st degree. Jimenez committed the instant offense while under a criminal justice sentence of parole resulting in two additional criminal history points under U.S.S.G. § 4A1.1(d). Jimenez also committed the instant offense less than two years after release from imprisonment, resulting in one additional criminal history point under U.S.S.G. § 4A1.1(e). (Agreement at 2.) Accordingly, the parties stipulated that Jimenez fell in Criminal History Category IV, and that his resulting stipulated Guidelines range was 121-151 months' imprisonment. (Id. at 3.)

On August 18, 2005, Jimenez pled guilty to Count One. At Jimenez's plea proceeding before Magistrate Judge Theodore H. Katz, Jimenez indicated that he fully understood both his right to proceed to trial on the charges against him and the fact that he was waiving that right by pleading guilty:

    Q:   Do you understand that you have a right to plead not
            guilty and that if you do so you have the right to a
            jury trial?

3

```
A:   Yes.
Q:   Do you understand that if you chose to go to trial the
     burden would be on the government to prove your guilt
     beyond a reasonable doubt?
A:   Yes, your Honor.
. . . .
Q:   Do you understand that if you plead guilty to the
     charge in Count one there will be no trial? The next
     stage in this proceeding will be your sentencing by
     Judge Jones.
A:   Yes, sir.
. . . .
Q:   Have any threats been made to you by anyone that are
     causing you to plead guilty today?
A:   Not at all.
Q:   Have any promises been made to you about the sentence
     that you will receive?
A:   No, your Honor.
. . . .
Q:   Is your plea made voluntarily and of your own
     freewill?
A:   Yes, your Honor.
```

(Plea Tr. at 5-7, 10.) Throughout these proceedings, Jimenez was

represented by appointed counsel Donna R. Newman, Esq.

("Newman").

On April 7, 2006, Jimenez appeared for sentencing before

this Court. The Court adopted the findings of fact in Jimenez's

Pre-sentencing Investigation Report. (Sentencing Tr. 18-20.) The

Court noted that the Guidelines sentencing range would be 121-

151 months, "[i]ndeed, that's the agreed upon range, which the

parties have also agreed is a reasonable sentence in this case."

(Id. at 3.) The Court also pointed out that there is a

"mandatory minimum of 10 years in prison, which would mandate a

sentence of 120 months." (Id.) The Court imposed a term of

4

imprisonment of 120 months to be followed by five years'
supervised release. (Id. at 4.) A judgment setting forth the
same was entered on June 5, 2006.

On April 6, 2007, Jimenez filed the instant Petition with
this Court.[1]

## DISCUSSION

## I.   Jimenez's § 2255 Petition Is Procedurally Barred By His Guilty Plea And The Waiver In His Plea Agreement

In the Agreement Jimenez negotiated with the government, he
agreed to waive his right to appeal or collaterally attack any
sentence of imprisonment of 151 months or less. (Agreement at
3.) The Second Circuit has repeatedly held that such waivers are
generally enforceable. See, e.g., United States v. Fisher, 232
F.3d 301, 303 (2d Cir. 2000); United States v. Gomez-Perez, 215
F.3d 315, 319 (2d Cir. 2000); United States v. Djelevic, 161
F.3d 104, 107-07 (2d Cir. 1998). The rationale for this rule is
compelling. As the Second Circuit pronounced in United States v.
Salcido-Contreras, 990 F.2d 51, 53 (2d Cir. 1993):

> In no circumstance . . . may a defendant, who has
> secured the benefits of a plea agreement and knowingly
> and voluntarily waived the right to appeal a certain
> sentence, then appeal the merits of a sentence
> conforming to the agreement.  Such a remedy would
> render the plea bargaining process and the resulting
> agreement meaningless.

---

[1]   The Court ordered the Government to file a response no later than
September 21, 2007. On May 27, 2009, the Court issued an Order stating
that it not received the Government's response and ordering an answer
no later than sixty days from the issuance of the Order. Despite its
tardiness, the Court will consider the Government's submission.

Here, Jimenez entered into the Agreement in which he
stipulated that the applicable Guidelines range was 121 to 151
months' imprisonment, and in which he explicitly waived his
right to appeal or collaterally attack a sentence within or
below that range. (Agreement at 3.) Jimenez then received a 120-
month sentence, the statutory minimum and, indeed, one month
below the bottom of the stipulated Guidelines range. Pursuant to
the law of this Circuit, Jimenez's Section 2255 Petition is,
accordingly, barred by his knowing and voluntary waiver in the
Agreement.

A narrow exception to the enforcement of a waiver in a plea
agreement exists where a defendant can show that ineffective
assistance of counsel rendered the defendant's agreement to the
waiver unknowing or involuntary. See United States v. Monzon,
359 F.3d 110, 118-19 (2d Cir. 2004); Olivares v. United States,
No. 05 Civ. 6094 (SHS), 2006 WL 2057188, at *2 (S.D.N.Y. July
24, 2006). Here, the record does not suggest, let alone support
a finding, that ineffective assistance of counsel, or anything
else, led to an unknowing or involuntary waiver.

The standards for ineffective assistance of counsel in
conjunction with a guilty plea are substantially similar to
those that apply at trial. To succeed, Jimenez "must demonstrate
that counsel's performance fell below the prevailing

6

professional norms with a showing sufficient to overcome the 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" Hill v. Lockhart, 474 U.S. 52 (1985); Strickland v. Washington, 466 U.S. 668, 669 (1984). "Second, a defendant must show that 'there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59.

Jimenez does not identify a single error by his counsel, let alone one that caused him to plead guilty and waive his right to appeal when he otherwise would not have done so. Jimenez's entire ineffective assistance of counsel claim is based on one argument: that a member of a drug trafficking conspiracy can only be held culpable for the amount of drugs he personally is alleged to have distributed and his counsel was therefore constitutionally ineffective for allowing him to plead guilty to conspiring to sell any amount more than the 42 glassines of heroin which Jimenez was identified as selling in the overt acts section of the Indictment. (See Petition at 2.)

That is wrong in two ways. First, the law in this Circuit is clear that a member of a drug trafficking conspiracy can be held accountable for all sales by co-conspirators that the defendant is aware of or that should have been reasonably foreseeable to him. See United States v. Jackson, 335 F.3d 170,

181 (2d Cir. 2003) (holding that it is "well-established law" that a defendant in a drug conspiracy can be held accountable for the entire drug quantity of drugs his co-conspirators conspired to distribute or possess, "provided he knew of his co-conspirator's illicit activities or the activities were reasonably foreseeable by him.")

Second, as a factual matter, there is no suggestion by Jimenez that he was misled or misinformed as to the scope of his culpability for the amounts trafficked by his co-conspirators. Indeed, the record makes clear that Jimenez understood that he was pleading guilty to being a member of a drug trafficking organization that conspired to sell a kilogram or more of heroin. In fact, the record suggests that Jimenez himself may have been responsible for trafficking more than one kilogram of heroin. Jimenez states during his allocution that he had "agreed to sell with others in the Bronx to sell drugs. I was involved in the sale of at least one kilo and more. I knew what I was doing and it was illegal." (Plea Tr. 11.) Given Jimenez's plea allocution and the absence of any challenge to its factual accuracy, Jimenez's complaint about the overt act language when compared to the charging language is of no moment.

Since Jimenez's waiver of his right to appeal was knowing and voluntary and does not fall into the ineffective assistance of counsel exception, his 2255 Petition is procedurally barred.

## II. There Is No Merit To The Substantive Grounds Set Forth In The 2255 Petition

Even if Petitioner's claims were not procedurally barred, which they are, Jimenez's three substantive claims are rejected on the merits. In his Petition, Jimenez claims (1) that he received constitutionally ineffective assistance of counsel; (2) that he was denied his Sixth Amendment right to trial by jury; and (3) that his transfer from state prison to federal prison violated his constitutional rights. The Court considers each of these arguments in turn.

### A. Ineffective Assistance of Counsel

Jimenez argues that he received ineffective assistance of counsel because he was allowed to plead guilty to conspiring to sell an amount of drugs in excess to the amount he personally was identified as selling in the overt actions section of the Indictment. As discussed above, Jimenez's plea was knowing and voluntary and he has failed to identify any error by his counsel, much less an error that could be deemed constitutional ineffectiveness under Strickland. As a result, this claim is barred.

### B. Sixth Amendment Violation

Jimenez claims that he was deprived of his constitutional right to trial by jury because he was sentenced for a conspiracy to distribute one kilogram or more of heroin whereas the

9

Indictment only identifies 42 glassines of heroin that he personally sold. (Petition at 2.) This claim is not supported by the record and is without merit. During his plea allocution before Judge Katz, Jimenez was asked pointed questions regarding his complete understanding of the implications that would result from a plea of guilty: "Do you understand that you have a right to plead not guilty and that if you do so you have the right to a jury trial? ... [d]o you understand that if you plead guilty to the charge in Count One there will be no trial?" (Plea Tr. At 4.) Jimenez answered "yes" to both questions, indicating that he understood all of the ramifications of entering a plea of guilty, including the fact that he was waiving his Sixth Amendment right to trial by jury. (Id.) Jimenez's waiver was knowingly and voluntarily given and therefore he was not denied his constitutional right to trial by jury.

## C.   Jimenez's Transfer From State To Federal Custody

Jimenez argues that his transfer from state custody on Riker's Island, where he was incarcerated for violating the terms of a New York State parole violation, to federal prison so that he could face trial in the Southern District of New York, violated the State of New York's rights as a sovereign entity and Jimenez's constitutional rights. (Petition at 3-8.)

First, as to the State of New York, Jimenez does not have standing to assert any claims on behalf of the State and as a

result any such alleged violations cannot provide grounds to challenge Jimenez's sentence.

Moreover, the transfer of Jimenez from New York State custody to federal custody did not violate any of his constitutional rights or his rights under the Interstate Agreement on Detainers Act. As this Court found in Lopez v. Levi, 422 F.Supp. 846, 849 (S.D.N.Y. 1976), the transfer of a prisoner from state to federal custody, or vice-versa, pursuant to a writ of *habeas corpus ad prosequendum* or a similar state statute, does not violate the inmate's rights. In any event, the proper recourse for Jimenez to object to his transfer would have been to submit an application for an order restraining the Warden of Riker's Island from producing him to the Metropolitan Correctional Center in New York for trial in the Southern District of New York. See, Lopez, 422 F. Supp. at 847-48. Having failed to do so, Jimenez has waived this issue.

## CONCLUSION

For the reasons set forth above, it is hereby ordered that Jimenez's Petition for a writ of habeas corpus to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 is DENIED. As Jimenez has failed to make a substantial showing of the denial of a constitutional right, the Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253. The Clerk of the Court is directed to close this case.

SO ORDERED:

Barbara S. Jones
UNITED STATES DISTRICT JUDGE

Dated:     New York, New York
           July 14, 2010